UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN C. LEE #530085,

        Plaintiff,

v.

DUSTIN KING, et al.,

        Defendants.

_____/

Hon. Robert J. Jonker

Case No. 1:25-cv-373

## REPORT AND RECOMMENDATION

This matter is before me on Defendant Miller and Csernyik's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (ECF No. 30.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and dismiss Plaintiff's claims against Defendants Miller and Csernyik without prejudice for lack of exhaustion.

## I. Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on April 4, 2025, against several MDOC employees based on an incident that occurred at Bellamy Creek Correctional Facility (IBC) on May 6, 2024. (ECF No. 1.) Plaintiff's remaining claims are his Eighth Amendment excessive force claims against Defendants King, Russell, and Ige and his failure-to-intervene claims against Defendants Miller and Csernyik. (*See* ECF Nos. 28 and 29.)

1

Plaintiff alleges that on May 6, 2024, while in the Unit 5 small exercise yard at IBC, he saw Defendant Correctional Officers (CO) become enraged and verbally assault Prisoner Rice while threatening to "beat" and "break" Rice's "wrist." Rice appeared afraid of the COs and ran away from them towards, and then past, Plaintiff while screaming for help. (ECF No. 1 at PageID.4.) As the COs ran toward Plaintiff, he attempted to "defuse [sic] the situation and prevent an unnecessary beating" by raising his hands "in a posture of surrender," stating. "Please stop, think and be professional about this." (*Id.*)

The COs did not stop, but instead ran past him and "violently took Prisoner Rice to the ground" even though he was not "resisting, nor assaultive." (*Id.*) After observing the COs punching and kicking Rice, Plaintiff entered the fray by jumping onto the COs in order to prevent them from killing Rice. (*Id.* at PageID.5.) At this point, the COs, including Defendant King, turned on Plaintiff and placed him in a choke hold. Other officers, including Defendant Russell, sprayed chemical spray into Plaintiff's face, nose, and mouth, including a second time when he was not resisting or violating any rules. Plaintiff also alleges that Defendant Ige "field-goal-kicked" Plaintiff directly in his left temple, causing him excruciating pain in his brain, neck, head, and face, and causing him to lose consciousness. (*Id.* at PageID.5–6.)

Plaintiff alleges that Defendants King, Russell, and Ige's use of force was excessive contrary to the Eighth Amendment. He further alleges that Defendants Csernyik and Miller violated his Eighth Amendment rights by failing to intervene to prevent the misuse of force. (*Id.* at PageID.7–9.)

Defendants Csernyik and Miller now seek summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies against them.

**II. Motion Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond their control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ W (effective 09/25/2023). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ JJ. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ NN. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report for Plaintiff dated April 28, 2025, which shows the grievances arising out of IBC that Plaintiff filed at Step I in May of 2024 and pursued through Step III. (ECF No. 31-2.) The Step III Grievance Report shows that Plaintiff filed one grievance during this time, IBC-24-05-1154-28z. (*Id.* at PageID.138.) In this grievance, Plaintiff wrote:

> I was on 5:30 yard on 5/6/24 when I witnessed prisoner Rice 490612 being surrounded by multiple C.O.'s. Prisoner Rice ran in what look[ed] like [he meant] to avoid the threat that was upon [h]im. Prisoner Rice then ran past me screaming for help, as he [was] being chased by multiple C.O.'s[.] I then stepped in with (my hands raised) say[i]n[g] to a C.O. "please stop." At this moment of time[,] Prisoner Rice was taken to the ground and pounced on by several C.O.s, some had his legs pinned[,] some arms, while another had him in a choke hold. Once I saw Prisoner Rice struggling to breath[,] I stepped in again sayin[g] "he can't breath[.]" Then I was taken to the ground and put in a choke hold by a [t]all[,] bald[,] white CO. [W]hile being chocked (sic) out there was not one but two cans of ma[c]e sprayed in my face. Then a short[,] black African C.O. ran up and kicked me in the face. At this moment I just started praying [because] I thought they were going to kill me. My action's was of one who was fearful of inmate Rice['s] life which then turned out to fear for my own life. I believe the MDOC C.O. staff involved had intention of [c]ausing [g]reat [b]odily [injury] or death. Please take this Grievance seriously and [i]investigate [the] [i]ncident.

(ECF No. 31 at PageID.124–25 (quoting ECF No. 31-3 (cleaned up)).)

Defendants argue that Plaintiff's Step I grievance was insufficient to exhaust his failure-to-protect claims against them because it did not name them, identify them, or describe their

alleged violative conduct (failing to intervene to prevent use of excessive force). (PageID.31 at PageID.129–30.) Plaintiff does not dispute that his grievance did not identify Defendants Csernyik or Miller by name and that it did not complain that any CO failed to intervene to prevent the use of excessive force. Even so, Plaintiff presents a conglomeration of arguments in his response that boil down to the following: (1) his references to "multiple C.O.'s," "several C.O.'s," and the "MDOC C.O. staff" include all corrections staff present during the incident and would have alerted prison officials of the need to investigate his claims against Defendants for failing to protect him from the use of excessive force (ECF No. 38 at PageID.178); (2) the MDOC waived its right to insist on compliance with procedural requirements by addressing the grievance on the merits (*Id.* at PageID.176–77); and (3) prison officials thwarted Plaintiff's compliance with the grievance procedure by failing to notify him to name "the 'C.O. staff involved[.]" (*Id.* at PageID.178.)

Contrary to Plaintiff's argument, his Step I grievance did not provide sufficient factual detail to notify prison officials that some identified COs failed to protect Plaintiff from excessive force. Under well-established Sixth Circuit law, a grievant's failure to name a defendant at Step I generally amounts to failure to properly exhaust administrative remedies. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *see also Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) (stating that "because Brown failed to name Rivard, McCullick, Parsons, and Williams at step I of this grievance, he failed to exhaust his claims against them"). In some instances, however, when a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the inclusion of other information identifying the official, such as the official's title or position or even the facts set forth in the grievance. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *8 (E.D. Mich. July 31, 2018), *adopted by* 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) (collecting cases); *see also Christian v. Michigan Dep't*

6

*of Corrs.-Health Servs.*, No. 12-12936, 2013 WL 5348832, at \*4–5 (E.D. Mich. Sept. 24, 2013) (concluding that the plaintiff's general reference to "health services" in combination with specific recitations of the dates and subjects of health care kites sent to providers sufficed to identify them as "the target of the grievance"); *Harrington v. Smolinski*, No. 1:05-CV-688, 2006 WL 549383, at \*3 (W.D. Mich. Mar. 6, 2006) ("Although Plaintiff did not mention Defendant Smolinski by name, he sufficiently identified her by the title of 'Classification Director.'"). In *Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149 (6th Cir. Sept. 8, 2022), the plaintiff's grievance did not identify any individual by name but instead referred only to "health care" and "medical" in general. *Id.* at \*3. The Sixth Circuit nonetheless held that the grievance properly exhausted the plaintiff's claim against the nurse because: (1) prison officials construed the grievance as alleging that the plaintiff did not receive proper medical care for his injury on a specific date; (2) the officials addressed the medical care that the plaintiff had received on that date; and (3) although the response did not identify any healthcare worker by name, the plaintiff's medical records showed that the defendant nurse was the healthcare worker who treated the plaintiff on the specified date. *Id.* at \*4.

In contrast to the foregoing cases, nothing in Plaintiff's Step I grievance would have alerted prison officials that Plaintiff was claiming Defendants Csernyik and Miller, or some unidentified COs, had failed to protect Plaintiff from another officer's use of force.[1] Indeed, Plaintiff's allegations in his grievance were limited to unidentified COs'—whom Plaintiff described as "a

---

[1] Plaintiff cites *Solomon v Michigan Department of Corrections*, No. 2:10-cv-59, 2011 WL 4479300 (W.D. Mich. Aug. 31, 2011), *adopted by* 2011 WL 4479407 (W.D. Mich. Sept. 27, 2011), for the proposition that naming "healthcare staff" in a grievance suffices to properly exhaust the grievance where prison officials did not reject it for failing to identify the specific individuals involved in the matter. But nothing in *Soloman* supports that proposition. Instead, the court held that the plaintiff failed to exhaust his claims against two defendants because he "neither specifically mentioned nor raised any allegations against Defendants Buckner or Cody in the Step I grievances." *Id.* at \*3. *Solomon* thus supports Defendants' position, as Plaintiff neither specifically mentioned them, nor made any allegations against them.

[t]all[,] bald[,] white CO" and "a short[,] black African C.O."— use of force against Plaintiff. Because excessive force and failure-to-protect claims are legally distinct with different elements, *see Williams v. Holt*, No. 3:02-CV-634, 2006 WL 3741936, at \*3 n.2 (E.D. Tenn. Dec. 18, 2006), a prisoner's excessive force allegations, alone, would not reasonably notify prison officials that the prisoner's allegations encompassed failure to protect. *See McDougland v. Belluomini*, No. 2:22-cv-2242, 2025 WL 2808553, at \*18 (E.D. Cal. Oct. 2, 2025), *adopted by* 2025 WL 3230358 (E.D. Cal. Nov. 19, 2025) (prisoner's grievance alleging only excessive force and denial of medical care did not did exhaust failure-to-intervene claims because it did not indicate that prison staff's failure to intervene was an issue); *Paul v. Jones*, No. 3:18-1290, 2019 WL 6873905, at \*4 (M.D. Tenn. Dec. 17, 2019), *adopted by* 2020 WL 134175 (M.D. Tenn. Jan. 13, 2020) (finding that the prisoner's grievance addressing use of excessive force by officers did not exhaust his failure-to-protect claim because "[n]owhere in his grievance does he generally raise the issue of prison officials failing to protect him during the incident or make any specific allegations that Defendants Cosby and Howell failed to protect him"); *Young v. Balkind*, No. CV 12-7278, 2016 WL 2620804, at \*12–13 (C.D. Cal. Mar. 4, 2016), *adopted by* 2016 WL 2626745 (C.D. Cal. May 6, 2016) (prisoner's grievances alleging use of excessive force did not put prison officials on notice of his failure-to-protect claim). Plaintiff's argument that his references to "multiple C.O.'s" and "MDOC C.O. staff" provided sufficient information to notify prison officials that he was complaining about some COs' failure to intervene to stop the use of excessive force is wide of the mark. Even if those references could be interpreted as referencing use force against Plaintiff, as opposed to prisoner Rice, the grievance still complains of nothing more than excessive force.

Plaintiff's thwarting argument also lacks merit. Neither Defendants nor prison officials who responded to the grievance thwarted Plaintiff's exhaustion efforts. It was not incumbent on

prison officials to look past Plaintiff's grievance allegations to uncover claims he might have asserted, but did not. The policy itself imposes on the prisoner the obligation to include the necessary information supporting the issues he seeks to grieve: "The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how.)." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Y.

Finally, Plaintiff's waiver argument is meritless. The respondent's statement that the grievance would be investigated does not amount to waiver of the right to argue that the grievance lacked allegations concerning a failure to protect. "Waiver is the 'intentional relinquishment or abandonment of a known right.'" *Walker v. United States*, 134 F.4th 437, 440 (6th Cir. 2025) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Nothing in the grievance would have alerted prison officials that by investigating the excessive force allegations they were waiving the right to contest the scope of the grievance or Plaintiff's efforts to exhaust failure-to-protect claims not set forth in the grievance. Indeed, such a result is contrary to well-established Sixth Circuit law that the issues a prisoner plaintiff may raise in his lawsuit "are limited to the specific issues raised . . . in his grievance." *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002).

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion for summary judgment and **dismiss** Plaintiff's claims against them **without prejudice**.

Dated: April 13, 2026                    /s/ Sally J. Berens
                                         SALLY J. BERENS
                                         U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).